IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROGELIO AYALA-IBARRA,   No. CIV S-03-1804-CMK

    Plaintiff,

  vs.   MEMORANDUM OPINION AND ORDER

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.

_____/

       Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). Pursuant to the consent of the parties, this case is before the undersigned for final decision on plaintiff's motion for summary judgment (Doc. 12) and defendant's cross-motion for summary judgment (Doc. 14).

/ / /

/ / /

/ / /

/ / /

# I.  BACKGROUND

Plaintiff applied for disability insurance ("DI") and supplemental security income ("SSI") benefits on January 12, 2000, based on disability.  In his applications, plaintiff claims that his impairment began on July 13, 1998.  Plaintiff claims his disability consists of a combination of degenerative disc disease, diabetes, and hypertension.   Plaintiff is a United States citizen born September 10, 1957, with a sixth grade education completed in Mexico.

### A.  Summary of the Evidence

Plaintiff, who has diabetes and hypertension, injured his back in July 1998 in a work-related injury.  Plaintiff underwent a L4-5 anterior lumbar interbody fusion in May 1999.  By July 1999, plaintiff had a better range of motion, but continued to have low back pain.  Plaintiff's treating physicians noted continuing back problems through September 2000.  In October 2000, plaintiff was examined by Dr. Usman Ali, M.D., who opined that, while plaintiff continued to have low back pain and a modestly limited range of motion, plaintiff could perform sedentary work.  Specifically, Dr. Ali concluded that plaintiff could lift up to ten pounds, stand/walk with breaks up to four hours, sit with breaks up to six hours, and do limited bending, stooping, crouching, crawling, climbing, and balancing.

### B.  Procedural History

Plaintiff's claims were initially denied.  Following denial of his request for reconsideration, plaintiff requested an administrative hearing, which was held on January 24, 2001, before Administrative Law Judge ("ALJ") L. Kalei Fong.

In her November 9, 2001, decision, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since July 13, 1998;

2. The medical evidence establishes that the claimant has the following severe impairments: degenerative disc disease and disc herniation at L4-5 with back strain, hypertension under treatment with medication, and diabetes under treatment with medication;

///

> 3. The claimant has no impairment that meets or equals the criteria of any impairment listed in Appendix 1, Subpart P, Regulations No. 4;
>
> 4. The claimant's assertions concerning his ability to work are partially credible but not as limiting as alleged after December 1, 2000;
>
> 5. From July 13, 1998, to December 1, 2000, the claimant retains the residual functional capacity to perform less than a full range of sedentary work and did not have the ability to sustain any type of work on a regular and continuing basis;
>
> 6. The claimant is unable to perform the requirements of his past relevant work;
>
> 7. The claimant's residual functional capacity for the full range of sedentary work is reduced by additional limitations;
>
> 8. On July 13, 1998, the claimant was a younger individual age 18-44;
>
> 9. The claimant is illiterate;
>
> 10. The claimant has an unskilled to semiskilled work background;
>
> 11. Considering the claimant's additional limitations, he cannot make an adjustment to any work that exists in significant numbers in the national economy; a findings of disabled is therefore reached within the framework of medical-vocational rule 201.23;
>
> 12. Beginning December 1, 2000, the claimant has the residual functional capacity to perform sedentary work and a findings of not disabled is appropriate within the framework of rule 201.23;
>
> 13. There is evidence in the record indicating that the claimant has received worker's compensation payments since the alleged onset date; and
>
> 14. The claimant has been under a disability, as defined in the Social Security Act, from July 13, 1998, to December 1, 2000, but not thereafter (citation omitted).

Based on these findings, the ALJ concluded that plaintiff was disabled until December 1, 2000, but not thereafter. The ALJ concluded that plaintiff was not entitled to DI or SSI benefits after that date. After the Appeals Council declined review, this appeal followed.

/ / /

/ / /

/ / /

3

## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion."  See Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III.  DISCUSSION

In his motion for summary judgment, plaintiff argues that the ALJ erred by:  (1) failing to obtain vocational expert testimony; and (2) failing to make a finding of disabled given plaintiff's age and past relevant work.

/ / /

/ / /

4

### A. **Vocational Expert Testimony**

The Medical-Vocational Guidelines ("Grids") provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity. The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity. See Heckler v. Campbell, 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations. See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983). Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on strength factors only. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)). The Commissioner may, however, rely on the Grids even when a claimant has combined exertional and non-exertional limitations, if non-exertional limitations do not impact the claimant's exertional capabilities.[1] See Bates v. Sullivan, 894 F.2d

---

[1] Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a). "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. See 20 C.F.R. §§ 404.1567(a) and 416.967(a). "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. See 20 C.F.R. §§ 404.1567(b) and 416.967(b). "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. See 20 C.F.R. §§ 404.1567(c) and 416.967(c). "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. See 20 C.F.R. §§

1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

In cases where the Grids are not fully applicable, the ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations. See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995). Specifically, where the Grids are inapplicable because plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony. See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

In this case, the ALJ concluded that, after December 1, 2000, plaintiff had the residual functional capacity to perform sedentary work with no limitations. By contrast, for the period July 13, 1998, to December 1, 2000, the ALJ concluded that plaintiff's "additional limitations" reduced his residual functional capacity to perform the full range of sedentary work. Thus, for the period after December 1, 2000, the ALJ concluded that plaintiff's "additional limitations" were not significant enough to impact plaintiff's ability to perform the full range of sedentary work. The question before the court is whether this finding is supported by substantial evidence in the record such that application of the Grids was appropriate. For the reasons discussed below, the court determines that substantial evidence exists to support the ALJ's finding.

First, the court notes that, while plaintiff chooses to frame the issue as a challenge to the ALJ's application of the Grids, plaintiff's brief fails to address the salient question. Specifically, plaintiff argues that "[t]he record does not reflect development of plaintiff's job responsibilities. Substantial evidence does not support a conclusion that some of [plaintiff's]

---

404.1567(d) and 416.967(d). "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. See 20 C.F.R. §§ 404.1567(e) and 416.967(e).

Non-exertional activities include mental, sensory, postural, manipulative, and environmental matters which do not directly affect the primary strength activities. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e).

1 work was performed at the semiskilled level." Such an argument assumes that plaintiff's non-
2 exertional limitations were significant enough to preclude application of the Grids. Plaintiff,
3 however, offers no argument in support of this central assumption.

4       Second, the court notes that plaintiff does not challenge the ALJ's credibility
5 finding. Plaintiff also does not challenge the ALJ's determinations as to the weight to be given
6 various medical opinions. Therefore, the court will accept these findings.

7       Third, the court notes that plaintiff does not challenge the ALJ's finding as to
8 plaintiff's exertional limitations. In particular, the ALJ concluded that, after December 1, 2000,
9 plaintiff could perform the full range of sedentary work. Again, the court will accept this
10 finding.

11       Finally, the court notes that there is specific evidence supporting the ALJ's
12 finding that plaintiff's post-December 1, 2000, non-exertional limitations are not significant. As
13 to plaintiff's diabetes, treating notes show near acceptable control with no evidence of diabetes
14 complications. As to plaintiff's hypertension, there is no evidence of hospitalization or
15 limitations. As to both, the record reflects that plaintiff is receiving ongoing treatment and
16 medication. In addition, the medical consultant who evaluated plaintiff concluded that plaintiff
17 could perform the equivalent of sedentary work with no limitations posed by diabetes or
18 hypertension. As to postural limitations, which may be considered non-exertional, the records
19 supports the following finding made by the ALJ:

> However, beginning December 1, 2000, the undersigned gives great weight to the opinions of Dr. Ali who notes the claimant was continuing to have some residuals of his back injury and surgery with low back pain and modestly limited range of spine motion. He had normal neurological examination although he had nondermatomal sensory loss in both lower extremities. Dr. Ali opined the claimant can lift up to ten pounds, stand/walk with break up to four hours, sit with breaks up to six hours, and can do limited bending, stooping, crouching, crawling, climbing, and balancing, pushing/pulling.

25 Again, plaintiff does not argue that the ALJ improperly weighed the medical opinions.
26 / / /

In essence, the record shows that plaintiff had serious back problems which became better by December 1, 2000, following surgery. It appears that plaintiff was never severely limited by his diabetes or hypertension, and plaintiff does not argue otherwise. Therefore, the court concludes that substantial evidence supports the finding that plaintiff had no significant non-exertional limitations after December 1, 2000, which would preclude application of the Grids.

### B. Plaintiff's Age

Plaintiff argues that, because his past relevant work is unskilled, the Grids mandate a finding of disabled at age 45 or older. Put another way, plaintiff argues that the ALJ erred in concluding he was a younger individual in the age 18-44 group. Plaintiff asserts he should have been considered in the age 45-49 group. As defendant correctly observes, 42 U.S.C. § 405(g), which confers jurisdiction on this court, limits judicial review to final decisions of the Commissioner. In this case, the ALJ's decision is the final decision in this case. Thus, this court reviews to determine if, as of the date of that decision, the ALJ applied the correct law. In this case, the ALJ issued her decision on November 9, 2001. The parties do not dispute that, at that time, plaintiff was younger than 45. Therefore, the ALJ did not err in concluding that plaintiff was in the 18-44 age group. Plaintiff offers no support for his argument that his age should be considered as of the date of the Appeals Council's decision to deny review.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## IV. CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is denied;
2. Defendant's cross-motion for summary judgment is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED: January 19, 2006.

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE